IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT KALIS,                  :   CONSOLIDATED UNDER
                               :   MDL 875
      Plaintiff,               :
                               :
                               :   Transferred from the Northern
v.                             :   District of Illinois
                               :   (Case No. 13-05334)
                               :
A.W. CHESTERTON COMPANY,       :
ET AL.,                        :   E.D. PA CIVIL ACTION NO.
                               :   2:13-60020-ER
      Defendants.              :

# O R D E R

**AND NOW,** this **4th** day of **February, 2015**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Cleaver

Brooks, Inc. (Doc. No. 70) is **GRANTED in part; DENIED in part**,

with leave to refile in the transferor court after remand.[1]

---

[1] This case was transferred in September of 2013 from the United States District Court for the Northern District of Illinois to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiff Robert Kalis ("Plaintiff" or "Mr. Kalis") worked as a mechanic, engineer, electrician, maintenance worker, and pipefitter in Illinois from approximately 1960 to 1999. Defendant Cleaver Brooks, Inc. ("Defendant" or "Cleaver Brooks") manufactured boilers. Plaintiff has alleged that Decedent was exposed to asbestos from gaskets and packing used with Cleaver Brooks boilers.

Plaintiff was diagnosed with lung cancer in 2013. He alleges that he developed lung cancer as a result of his exposure to asbestos from, inter alia, Defendant's boilers.

Plaintiff has brought claims against various defendants. Defendant has moved for summary judgment, arguing that there is insufficient product identification evidence to establish causation with respect to its product(s). The parties agree that Illinois law applies.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

The parties have agreed that Illinois substantive law applies. Therefore, this Court will apply Illinois law in deciding Cleaver Brooks's Motion for Summary Judgment. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

### C. Product Identification/Causation Under Illinois Law

This Court has previously considered the product identification/causation standard under Illinois law . Most recently, it wrote in Krik v. BP America (No. 11-63473):

In order to establish causation for an asbestos claim under Illinois law, a plaintiff must show that the defendant's asbestos was a "cause" of the illness. Thacker v. UNR Industries, Inc., 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." Id. "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." Zickhur v. Ericsson, Inc., 962 N.E.2d 974, 983 (Ill. App. (1st Dist.) 2011)(citing Thacker, 151 Ill.2d at 354). Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. Nolan v. Weil-McLain, 233 Ill.2d 416, 431 (Ill. 2009)(citing Thacker, 151 Ill.2d at 354-55). Proof may be made by either direct or circumstantial evidence. Thacker, 151 Ill.2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." Id. at 354

In applying the "substantial factor" test to cases based upon circumstantial evidence, Illinois courts utilize the "frequency, regularity, and proximity" test set out in cases decided by other courts, such as Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986). Thacker, 151 Ill.2d at 359. In order for a plaintiff relying on circumstantial evidence "to prevail on the causation issue, there must be some evidence that the defendant's asbestos was put to 'frequent' use in the [Plaintiff's workplace] in 'proximity' to where the [plaintiff] 'regularly' worked." Id. at 364. As part of the "proximity" prong, a plaintiff must be able to point to "sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the [plaintiff]." This "proximity" prong can be established under Illinois law by evidence of "fiber drift," which need not be introduced by an expert. Id. at 363-66.

In a recent case (involving a defendant Ericsson, as successor to Anaconda), an Illinois court made clear that a defendant cannot obtain summary judgment by presenting testimony of a corporate representative

3

that conflicts with a plaintiff's evidence pertaining to product identification - specifically noting that it is the province of the jury to assess the credibility of witnesses and weigh conflicting evidence. See Zickuhr, 962 N.E.2d at 985-86. In Zickhur, the decedent testified that he worked with asbestos-containing Anaconda wire from 1955 to 1984 at a U.S. Steel facility, and that he knew it was asbestos-containing because the wire reels contained the word "asbestos" on them - and the word "asbestos" was also contained on the cable and its jacket. A co-worker (Scott) testified that, beginning in the 1970s, he had seen cable spools of defendant Continental (which had purchased Anaconda) that contained the word "asbestos" on them. A corporate representatives (Eric Kothe) for defendant Continental (testifying about both Anaconda and Continental products) provided contradictory testimony that Anaconda stopped producing asbestos-containing cable in 1946 and that the word "asbestos" was never printed on any Anaconda (or Continental) cable reel. A second corporate representative (Regis Lageman) provided testimony, some of which was favorable for the plaintiff; specifically, that Continental produced asbestos-containing wire until 1984, that asbestos-containing wires were labeled with the word "asbestos," and that, although defendant did not presently have records indicating where defendant had sent its products, U.S. Steel had been a "big customer" of a certain type of defendant's wire that contained asbestos.

After a jury verdict in favor of the plaintiff, Defendant appealed, contending that (1) there was no evidence that defendant's cable/wire contained asbestos, and (2) there was no evidence that defendant's cable/wire caused decedent's mesothelioma. The appellate court affirmed the trial court (and upheld a jury verdict in favor of the plaintiff), holding that the issues of whether the cable and wire decedent worked with contained asbestos, and whether the defendant's cable and wire were the cause of the decedent's mesothelioma, were questions properly sent to the jury for determination. The appellate court noted that "the jury heard the evidence and passed upon the credibility of the witnesses and believed the plaintiff's witnesses over... Kothe." Id. at 986.

4

2012 WL 2914244, at *1.

In connection with another Defendant's motion/argument in that same case (Krik), this Court also wrote:

> Defendant urges this Court to reconsider the standard previously set forth, arguing that Illinois courts employ the Lohrmann "frequency, regularity, and proximity" test in all cases, and not just those in which a plaintiff relies upon circumstantial evidence. Specifically, Defendant cites to Zickhur and Nolan in support of this argument. The Court has considered Defendant's argument and the cases upon which it relies.
>
> The Court reiterates that Thacker is a decision of the Supreme Court of Illinois that directly addresses the product identification standard for asbestos cases brought under Illinois law. In Thacker, the decedent had testified to opening bags of asbestos of a kind not supplied by the defendant and had testified that he did not recall seeing the defendant's product anywhere in the facility. The only evidence identifying the defendant's product was testimony of a co-worker that the defendant's product had been seen in a shipping and receiving area of the facility, although the co-worker had not witnessed the product in the decedent's work area. In assessing the sufficiency of the plaintiff's evidence, the Court applied the "frequency, regularity, and proximity" test, noting that "plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation." 151 Ill.2d at 357. After discussing the Lohrmann "frequency, regularity, and proximity" test, the Thacker court set forth its rationale for applying the test to the evidence at hand, noting that "[t]hese requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." Id. at 359. This Court notes that the rationale of the Thacker court would not apply where a plaintiff relied upon direct evidence, as there would be no danger of "guesswork" and little (if any) difficulty of proving contact. The Court therefore concludes, as it has previously, that Thacker indicates that the "frequency,

regularity, and proximity" test is applicable in cases in which a plaintiff relies on circumstantial evidence. This is not inconsistent with the holding of Lohrmann. See Lohrmann, 782 F.2d at 1162.

Defendant argues that the decision of the Supreme Court of Illinois in Nolan makes clear that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of whether a plaintiff is relying on direct or circumstantial evidence. Nolan, however, did not directly address the product identification standard for asbestos cases under Illinois law. Rather, the question considered by the court was whether the trial court erred in excluding from trial all evidence of a plaintiff's exposure to asbestos from other manufacturers' products when a sole defendant was remaining at trial. Nolan, 233 Ill.2d at 428. In deciding that issue, the court rejected the intermediary appellate court's conclusion that, when the "frequency, regularity, and proximity" test is met, legal causation has been established. Although it is true that Nolan makes reference to the Lohrmann test without clarifying that it is only applicable in cases based upon circumstantial evidence, the Nolan court was not deciding whether the trial court had applied the proper product identification standard, and it cannot be fairly or accurately said that Nolan sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases. Nothing in Nolan indicates that the Supreme Court of Illinois intended to alter the standard it set forth in Thacker.

Finally, the Court has considered Defendant's argument that Zickhur indicates that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of the type of evidence relied upon by a plaintiff. As an initial matter, the Court notes that a decision from an intermediary appellate court will not, by itself, displace a rule of law issued by the highest court of the state. However, Zickhur does not contradict Thacker. Rather, the Zickhur court makes clear that the "frequency, regularity, and proximity" test is not always applicable – noting that "the 'frequency, regularity and proximity' test may be

6

> used...[and] that a plaintiff <u>can</u> show exposure to defendant's asbestos" with it. 962 N.E.2d at 986 (emphasis added). Moreover, while it is true that <u>Zickhur</u> involved some pieces of direct evidence, it is worth noting that the court's resolution of the issue of the sufficiency of the evidence to withstand a motion for a directed verdict turned on its analysis of circumstantial evidence, in the context of direct and conflicting evidence presented by parties on both sides of the case. Therefore, it cannot be fairly or accurately said that <u>Zickhur</u> sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases.

2012 WL 2914246, at *1.

D. <u>The "Sham Affidavit" Doctrine</u>

The "sham affidavit doctrine" is recognized pursuant to Federal Rule of Civil Procedure 56 as a way of showing that there is no genuine dispute as to any material fact. Given that the "sham affidavit doctrine" is an issue of federal law, the MDL transferee court applies the federal law of the circuit where it sits, which in this case is the law of the United States Court of Appeals for the Third Circuit. <u>In re Asbestos Prods. Liability Litig. (No. VI)</u>, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) (citing <u>In re Diet Drugs Liability Litig.</u>, 294 F. Supp. 2d 667, 672 (E.D. Pa. 2003)).

In <u>Baer v. Chase</u>, the United States Court of Appeals for the Third Circuit described the "sham affidavit" doctrine noting that, "we have held that a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." <u>Id.</u> at 624 (citing <u>Hackman v. Valley Fair</u>, 932 F.2d 239, 241 (3d Cir. 1991)).

Although the "sham affidavit doctrine" has traditionally been applied to strike affidavits filed after depositions have been taken, it applies with equal force to affidavits filed prior to the taking of a deposition. <u>In re: Citx Corp.</u>, 448 F.3d 672, 679 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit noted, [w]e perceive no principle that cabins sham affidavits to a particular sequence."

7

Id. (internal citations omitted). Testimony taken in a deposition, rather than sworn to in an affidavit, is considered more favorable for summary judgment purposes since testimony sworn to in an affidavit is not subject to cross-examination. 448 F.3d at 680 (citing 10B Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure § 2722 at 373, 379).

## II. Defendant Cleaver Brooks's Motion for Summary Judgment

### A. Defendant's Arguments

Product Identification / Causation

Defendant Cleaver Brooks argues that there is insufficient product identification evidence to support a finding of causation with respect to its product(s). Specifically it contends that, under Illinois law, (1) it cannot be liable for injury arising from products (including component and/or replacement parts) that it did not manufacture or sell (i.e., that Illinois recognizes the so-called "bare metal defense"), and (2) even if it were liable for such products, Plaintiff's evidence of asbestos exposure from those products is insufficient.

Objections to Evidence

In its reply brief, Cleaver Brooks objects to various aspects of Plaintiff's affidavit (submitted in opposition to Defendant's motion), contending that (1) it was not signed before a duly appointed notary, (2) it provided the first disclosure of manuals pertaining to Defendant's boilers (which is, therefore, untimely), (3) contains testimony that contradicts Plaintiff's deposition testimony, thus rendering it an inadmissible "sham affidavit." With respect to this last point, Defendant contends specifically that Plaintiff testified at deposition that he had seen various manuals around but did not specifically look at any Cleaver Brooks manual, but that his newly-presented affidavit contends that he reviewed a particular Cleaver Brooks manual that is attached as an exhibit to the affidavit.

### B. Plaintiff's Arguments

Product Identification / Causation

In response to Defendant's assertion that there is insufficient product identification evidence to establish

8

causation with respect to its products, Plaintiff points to, inter alia, the following evidence, summarized in pertinent part:

- <u>Deposition of Plaintiff Robert Kalis</u>
  Mr. Kalis testified that he worked with three Cleaver Brooks boilers at the Motorola facility in Illinois in 1967-71. He provides testimony that he prepared these boilers for inspection every summer for five years, and that he was exposed to respirable dust from gaskets used with these Cleaver Brooks boilers during this process. He also provides testimony that these gaskets contained asbestos, based on his training and experience with gaskets. Mr. Kalis testified that each boiler preparation was approximately one and half day's worth of work (opening it for the inspection and closing it after the inspection).

  (Pl. Ex. 1, Doc. No. 81-1)

- <u>Misc. Cleaver Brooks Boiler-Related Documents</u>
  Plaintiff attaches various documents pertaining to Cleaver Brooks boilers, including manuals.

  (Pl. Exs. 3-4, Doc. Nos. 81-3 to 81-9)

- <u>Cleaver Brooks Manuals Accompanied by Affidavit of Plaintiff Robert Kalis</u>
  Plaintiff provides a one-page unnotarized affidavit that attaches 2 Cleaver Brooks boiler manuals, stating that the boilers in the photos in the manuals looked substantially similar to the Cleaver Brooks boilers he worked on at Motorola. He also states that one of the photos (of asbestos ropes, gaskets, and cement) is the same as what he worked with in Cleaver Brooks boilers at Motorola.

  (Pl. Ex. 6, Doc. No. 81-11)

Plaintiff contends that Illinois law does not recognize the so-called "bare metal defense" – and has briefed this issue at length.

Objections to Evidence

Because Defendant's objections were raised in its reply brief, Plaintiff has not had an opportunity to respond to those objections.

### C. Analysis

Objections to Evidence

As a preliminary matter, the Court notes that it has reviewed Defendant's numerous objections to Plaintiff's affidavit. The Court has reviewed Plaintiff's affidavit and has determined that it is not a "sham affidavit." Contrary to Defendant's representation, it does not state that Plaintiff ever viewed the attached manuals during his time working with Defendant's boilers. As such, the affidavit will not be stricken on this basis. See Baer, 392 F.3d at 624.

For the reasons set forth below, Plaintiff's evidence is sufficient to survive summary judgment even without this affidavit. As such, the Court need not address the remainder of Defendant's objections to this piece of evidence. However, for purposes of deciding Defendant's motion for summary judgment, the Court will not consider Plaintiff's affidavit.

Product Identification / Causation

Plaintiff has alleged that Decedent was exposed to asbestos from gaskets and packing used in connection with Cleaver Brooks boilers. The Court considers the evidence pertaining to each alleged source of exposure separately:

(i) Gaskets

With respect to gaskets used in connection with boilers, Plaintiff is relying on direct evidence to establish causation. As such, Plaintiff need not satisfy the "frequency, regularity, and proximity" test, see Thacker, 151 Ill.2d at 359.

There is evidence that Plaintiff was exposed to respirable dust from gaskets used with Cleaver Brooks boilers on many occasions during a period of approximately five (5) years. There is evidence that these gaskets contained asbestos.

10

---

Importantly, however, there is no evidence that Defendant manufactured or supplied these gaskets. As such, Defendant can only face liability for this exposure if Illinois does not recognize the so-called "bare metal defense."

The Court has reviewed Illinois law on this issue and has determined that it has not been fully and squarely addressed by any appellate court in Illinois in the context of asbestos litigation. As such, there is no clear statement of Illinois law on the issue. Whether Illinois law recognizes this defense (i.e., whether Illinois law holds a boiler manufacturer liable for component parts incorporated into its product which it neither manufactured nor supplied) is a matter of policy. A court situated in Illinois is closer to - and has more familiarity with - Illinois law and policy. As such, rather than predicting what the Supreme Court of Illinois would do, the Court deems it appropriate to remand this case for a court in Illinois to decide this issue. See, e.g., Faddish v. CBS Corp., No. 09-70626, 2010 WL 4159238 (E.D. Pa. Oct. 22, 2010) (Robreno, J.); Pray v. AC and S, Inc., No. 08-91884 (Dec. 17, 2012) (Robreno, J.) (Order on motion for summary judgment of Defendant Westinghouse Electric Corporation). Accordingly, summary judgment in favor of Defendant on grounds of insufficient evidence of product identification/causation is denied with respect to alleged asbestos exposure arising from gaskets, with leave to refile in the transferor court after remand.

(ii) Packing

With respect to packing, Plaintiff has failed to cite in his brief to any evidence of exposure to packing (asbestos-containing or otherwise). As such, he is unable to establish causation with respect to packing, regardless of whether or not the "frequency, regularity, and proximity" test applies to claims arising from this alleged source of exposure. See Thacker, 151 Ill.2d at 359. Therefore, summary judgment in favor of Defendant is warranted with respect to this alleged source of exposure. Id.; Anderson, 477 U.S. at 248.

D. Conclusion

Defendant's motion for summary judgment is granted with respect to alleged asbestos exposure arising from packing used in connection with boilers because Plaintiff has failed to identify

11

E.D. Pa. No. 2:13-60020-ER             **AND IT IS SO ORDERED.**

/s/ Eduardo C. Robreno
_____
**EDUARDO C. ROBRENO, J.**

---

sufficient evidence to support a finding of causation with respect to that alleged exposure.

      Defendant's motion for summary judgment is denied with respect to alleged asbestos exposure arising from gaskets (with leave to refile in the transferor court) because no Illinois appellate court has yet addressed the availability of the so-called "bare metal defense" under Illinois law.

12